ANVIL GOLD MIN. CO. v. HOXSIE et al.

(Circuit Court of Appeals, Ninth Circuit. September 14, 1903.)

No. 900.

**1. ATTACHMENT—ACTION ON BOND—CONCLUSIVENESS OF JUDGMENT IN ORIGINAL ACTION.**

In an action on an attachment bond given under Alaska Code, § 137, conditioned, as therein provided, for the payment of "all costs that may be adjudged to the defendant and all damages he may sustain by reason of the attachment if the same be wrongful or without sufficient cause," a judgment in favor of the defendant in the attachment suit is conclusive that the attachment was without sufficient cause, and of the liability of the obligors upon the bond.

**2. SAME—EFFECT OF GIVING BOND TO RELEASE ATTACHMENT—ESTOPPEL.**

A defendant in an attachment suit under the Alaska Code, who gives the undertaking provided for by section 150 for the release of the attachment, is not thereby estopped to maintain an action on the attachment bond to recover his costs and the damages he may have sustained by reason of the attachment, if it is finally determined that plaintiff had no cause of action, although he may be held to have waived irregularities or defects in the attachment proceedings.

**3. SAME—ACTION ON BOND—DEFENSES.**

Where the complaint in an action to recover damages for wrongful attachment alleges that plaintiff lost the use of the attached property for a stated time, allegations in the answer setting up the proceedings in the attachment suit, showing that plaintiff procured the release of the

property shortly after it was seized, while not stating a complete defense, are relevant and material on the question of damages, and not subject to demurrer.

**4. SAME.**

    In an action on an attachment bond to recover costs and actual damages for the payment of which the bond is conditioned, the good faith of the plaintiff in the attachment suit and the sureties on the bond is immaterial, and constitutes no defense.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

On the 18th day of September, 1900, one Carrie B. Lee brought suit in the District Court for the District of Alaska, Second Division, against the Anvil Gold Mining Company, a corporation, upon an alleged implied contract for the direct payment of money, to recover the sum of $923, together with costs. Plaintiff applied to the clerk of the court for a writ of attachment against the property of the defendant, and thereupon, and on the same day, C. E. Hoxsie and Robert Lyng executed, and on the 19th day of September, 1900, filed with the clerk of the court in that action, an undertaking for writ of attachment, under the provisions of section 137 of the Alaska Code of Civil Procedure (Act June 6, 1900, c. 786, 30 Stat. 354). The undertaking provided that if the defendant should recover judgment in said action the plaintiff would pay all costs awarded to the defendant, and all damages which it might sustain by reason of the attachment, not exceeding the sum of $1,200. Upon the application and undertaking being filed, the clerk of the court issued a writ of attachment directed to the marshal of the district and division, requiring the marshal to attach and safely keep sufficient property of the defendant to satisfy the demand of the plaintiff. In pursuance of the writ of attachment the marshal, on the 19th day of September, 1900, executed said writ by attaching the schooner Seven Sisters, her sails, tackle, apparel, and furniture. On the 11th day of October, 1900, the Anvil Gold Mining Company, the defendant in the action, made application to the court, under section 149 of the Code of Civil Procedure, for an order releasing the writ of attachment, and for that purpose filed with the clerk of the court an undertaking, under section 150 of the same Code, for the release of the attached property. Thereupon the court made an order that the attachment be discharged, and pursuant to such order the attachment was released and discharged, and such further proceedings were had that on the 16th day of May, 1901, the defendant recovered a judgment against the plaintiff for the sum of $39 and the costs in said action. Thereupon the Anvil Gold Mining Company, the defendant in that action, brought the present suit against C. E. Hoxsie and Robert Lyng, the sureties on the attachment bond given by the plaintiff in the former action, to recover the sum of $1,200, the penal amount of the bond.

It is alleged in the amended complaint that at the time of the issuing of the attachment the plaintiff was the owner of the schooner Seven Sisters, her tackle, sails, apparel, and furniture, then lying at Port Safety, in said district; that the marshal, pursuant to the said writ of attachment, levied upon, attached, and took possession of the said schooner, her sails, tackle, apparel, and furniture, and thereby the plaintiff lost the use, earnings, and profits of the same from the said 19th day of September, 1900, to the ———— day of June, 1901, and the said schooner was compelled to remain in the ice during the winter of 1900–1901, being thereby greatly injured, all to plaintiff's damage in the sum of $2,000. It is alleged that the attachment was wrongful and without sufficient cause. It is also alleged that the plaintiff, on the 16th day of May, 1901, recovered judgment against Carrie B. Lee, in the attachment suit, in the sum of $39 and costs of suit.

The defendants, answering the amended complaint, deny that the attachment was wrongful or without sufficient cause; deny any knowledge or information as to whether the plaintiff was the owner of the schooner Seven Sisters, her tackle, sails, apparel, and furniture; and deny that the

---

¶ 4. See Attachment, vol. 5, Cent. Dig. § 1241.

plaintiff suffered damage in the sum of $2,000, or any other sum. And for a further and separate answer and defense the defendants recite the commencement of an action against the Anvil Gold Mining Company by Carrie B. Lee; the issuing of an attachment therein on the 18th day of September, 1900; and the levy of the attachment upon the said schooner, the property of the Anvil Gold Mining Company, on the 19th day of September, 1900. It is also alleged that upon a sufficient undertaking being filed by the company on the 11th day of October, 1900, the attached property was turned over to the company, and the attachment discharged. It is alleged, as a further and separate defense to the action, that Carrie B. Lee, the plaintiff in the attachment suit, and the defendants in this action, were advised by counsel that the plaintiff in the attachment suit had a good, sufficient, and meritorious cause of action, and, being so advised, the defendants signed the undertaking set forth in the complaint, acting in good faith, and in an honest belief that the plaintiff in the attachment suit had a good, sufficient, and meritorious cause of action against the Anvil Gold Mining Company, and not for the purpose of harassing, annoying, and damaging the said mining company in any wise. It is also alleged, for a further and separate defense to the action, that the said Anvil Gold Mining Company, the defendant in the attachment suit, filed an undertaking with the clerk of the court for the release of said attachment, the sureties in said undertaking obligating themselves that in consideration of the release of said attachment they would pay to the plaintiff in that action the amount of whatever judgment might be recovered by her in said action, together with costs and disbursements, and thereupon the attachment was discharged, and it is alleged that thereby the defendant mining company (plaintiff herein) waived all rights of action on the undertaking set forth in the amended complaint herein. To each of these several, further, and separate defenses plaintiff herein demurred, on the ground that they did not constitute a defense to the action. The court overruled the demurrer to these further and separate defenses, holding that they were sufficient, and the plaintiff electing not to reply to the answer, but to stand on the demurrer, judgment was entered against the plaintiff. The plaintiff thereupon brought the case to this court upon writ of error.

Keller & Fuller, F. E. Fuller, and George D. Campbell, for plaintiff in error.

W. T. Hume, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts in the foregoing language, delivered the opinion of the court.

The Alaska Code of Civil Procedure provides, in chapter 14 (Act June 6, 1900, c. 786, 30 Stat. 353), for an attachment proceeding. Section 135 provides when plaintiff may have defendant's property attached. Section 136 provides that the writ of attachment shall be issued by the clerk of the court in which the action is pending whenever the plaintiff, or any one in his behalf, shall make and file an affidavit showing certain particulars concerning defendant's indebtedness, the absence of security, and that the attachment is not sought nor the action prosecuted to hinder, delay, or defraud any creditor of the defendant. Section 137 provides as follows:

"Upon filing the affidavit with the clerk, the plaintiff shall be entitled to have the writ issued as soon thereafter as he shall file with the clerk his undertaking, with one or more sureties, in a sum not less than one hundred dollars, and equal to the amount for which the plaintiff demands judgment, and to the effect that the plaintiff will pay all costs that may be adjudged to the defendant, and all damages that he may sustain by reason of the attachment, if the same be wrongful or without sufficient cause, not exceeding the sum specified in the undertaking. With the undertaking the plaintiff

shall also file the affidavits of the sureties, from which affidavits it must appear that such sureties are qualified, and that taken together they are worth double the amount of the sum specified in the undertaking, over all debts and liabilities and property exempt from execution."

The complaint in the present case alleged that the attachment in the suit of Carrie B. Lee v. The Anvil Gold Mining Company was wrongful and without sufficient cause. This allegation was denied in defendants' answer. The judgment in the attachment suit set forth in the complaint determined that the plaintiff had no cause of action against the defendant upon the facts stated in the complaint in that action. What effect did this judgment have upon the attachment? Did it not determine that the attachment was wrongful and without sufficient cause? In other words, can an attachment of the defendant's property be right and for a sufficient cause when the plaintiff has no cause of action against the defendant? Can an attachment issued to secure the satisfaction of a judgment be right and sufficient where there is no debt upon which a judgment can be entered? We think not. If the attachment suit terminates by a finding in favor of the defendant on an issue as to the truth of the facts alleged as the ground for the attachment, then the judgment conclusively establishes that the attachment was wrongfully obtained; and the same result follows if, when the attachment was obtained, there was no debt due from the defendant to the plaintiff. Drake on Attachment (7th Ed.) § 173; Lockhart v. Woods, 38 Ala. 631; Tucker v. Adams, 52 Ala. 254; Steen v. Ross, 22 Fla. 480; Young v. Broadbent, 23 Iowa, 539; Wetherell v. Sprigley, 43 Iowa, 41; Harger v. Spofford, 46 Iowa, 11; Farrar v. Talley, 68 Tex. 349, 4 S. W. 558.

The basis of the attachment proceeding is a cause of action upon a contract, express or implied, for the direct payment of money. When the cause of action fails the attachment fails, and for the reason that it is without sufficient cause. The obligation of the undertaking upon attachment is not that the plaintiff will pay all costs that the defendant may incur, and all damages he may sustain by reason of the attachment having been allowed wrongfully, or allowed without sufficient cause, but it is that the plaintiff will pay all costs that may be adjudged to the defendant, and all damages that he may sustain by reason of the attachment, if the same be wrongful or without sufficient cause. The liability of the undertaking is determined, not upon a separate issue relating to irregular or defective attachment proceedings, but upon the issues of the case relating to the cause of action. This interpretation of the statute is made clearer by considering other sections of the chapter of the Code relating to attachments. Section 151 provides that "the defendant may at any time before judgment, except where the cause of attachment and the cause of action are the same, apply to the court or judge thereof where the action is pending to discharge the attachment in the manner and with the effect as provided in sections one hundred and twenty-one and one hundred and twenty-two for the discharge of a defendant from arrest." Section 121 (chapter 12) provides that "a defendant arrested may, at any time before judgment, apply on motion to the court or judge thereof in which the action is pending, upon notice to the plaintiff, to vacate the writ of ar-

rest." Section 122 provides: "If a motion be made upon affidavits or other proofs on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits, or other proofs, in addition to those upon which the writ was issued. If upon the hearing of such motion it shall satisfactorily appear that there was not sufficient cause to allow the writ, or that there is other good cause which would entitle him to be discharged on habeas corpus, the same shall be vacated, or in case he has given bail the court may discharge the same or reduce the amount thereof on good cause shown." Under these sections of the Code, the question to be determined upon a motion to vacate the attachment prior to the judgment in the case is whether there was "sufficient cause to allow the writ" or "other good cause" shown entitling the defendant to the discharge of the writ. These "causes" necessarily relate to defects and irregularities apparent on the face of the proceedings, and not to any question involved in the cause of action. Bank of Winnemucca v. Mullaney, 29 Or. 268, 45 Pac. 796. It was further held in that case that the statute of Oregon, as it then stood, providing that the writ of attachment might issue in all actions for the payment of money without specifying any other cause, rendered it unavailable for the discharge of the writ of attachment in that case, as the cause of attachment and the cause of action were the same, and within the exception contained in section 145 of Hill's Code (section 151, Alaska Code). We now see the significance of the language of section 137 of the Alaska Code, requiring that the undertaking on attachment shall be security for "all costs that may be adjudged to the defendant, and all damages he may sustain by reason of the attachment, if the same be wrongful or without sufficient cause." It is the final judgment in the case that is to determine the liability of the obligors upon the attachment undertaking. But the appellees contend that the appellant, the defendant in the attachment suit, having given an undertaking for the release of the attachment under section 150 of the Alaska Code, has waived the right to raise the question whether the attachment was wrongful or without sufficient cause, or, as stated by the court below, the defendant waives all irregularities and defects in the original attachment proceedings, and admits an estoppel in the attachment suit against the attachment sureties by giving the bail required by the statute. It may be admitted, for the purposes of this case, that when the defendant in an attachment suit under the Alaska Code gives the undertaking provided in section 150, he waives his right to question mere irregularities and defects apparent upon the face of the original attachment proceedings; but it does not follow that he admits an estoppel as against a judgment in the attachment suit, where the cause of the attachment and the cause of action are the same. The reason why the defendant in an attachment suit who gives an undertaking for the release of the attachment may be deemed to have waived his right to question the regularity and correctness of the attachment proceedings is because there is no practical method provided for afterwards determining in the progress of that case the question whether there were irregularities or defects in such proceedings or not. The only issues left to be determined, after the release of the attachment, are

those relating to the cause of action; and where, as in this case and under the statute under consideration, these issues are the same as the cause of attachment, they are necessarily determined by the judgment, and all other questions may be deemed to have been waived. But this waiver extends no further, and there is no implied estoppel beyond that which appears upon the face of the attachment proceedings, and relating to such proceedings, that will deprive the defendant of the right to recover all costs he may have incurred and all damages he may have sustained by reason of the attachment, if it is finally determined that the plaintiff had no cause of action.

The court below was of the opinion that the Supreme Court of Oregon, in Drake v. Sworts, 24 Or. 201, 33 Pac. 563, construing provisions of the Code of Civil Procedure of Oregon which were copied into the Alaska Code, had practically decided that an undertaking on release of attachment was a waiver of a right of action on the undertaking given on procuring the attachment. One of the questions before the court in that case was whether the execution and delivery by the plaintiff (the defendant in the attachment suit) of a redelivery bond, as provided in section 154 of Hill's Code of Oregon (section 145, Alaska Code), operated as a discharge of the attachment and a waiver of the right of action on the undertaking on attachment. The court was of the opinion that there was a distinction between the effect of the bail bond and a redelivery bond; that the former, being given as security for the payment of such judgment as might be recovered in the action, operated to discharge the attachment, and was probably a waiver of the right of action on the undertaking, but that the latter, being an engagement to redeliver the attached property or pay the value thereof, did not dissolve the attachment or withdraw the property from the operation of the lien thereon, and did not therefore operate as a waiver of the right of action on the undertaking for the attachment. The latter question was before the court, the former was not, and the statement made concerning the former question was not essential to the decision of the main question. The court, however, referred to the case of Rachelman v. Skinner, 46 Minn. 196, 48 N. W. 776, as supporting its views upon the collateral question. In that case suit was brought by the defendant in the attachment proceedings, not against the plaintiffs and their sureties on the attachment bond, but against the plaintiffs alone, to recover damages for the issuance of the attachment against the property of the defendant alleged to have been maliciously sued out by the plaintiffs. After the attachment had been issued the defendant executed the bond provided for by the statute, and procured an order for the discharge of the attachment. Afterwards the defendant moved to set aside the attachment, upon affidavit and notice, and this motion the court granted, and also set aside the bond previously given by the defendant for the release of the attachment. Upon the trial of the action to recover damages for the issuance of the attachment, the court held that the defendant in the attachment proceedings had waived his objections to the validity of the attachment by giving the bond and procuring the discharge of the attachment. The case was accordingly dismissed. On appeal to the Supreme Court of the state

the judgment of the lower court was affirmed, the appellate court holding that where an attachment is dissolved by the action of the defendant without an opportunity to the opposite party in the same proceeding to test the validity of the writ of attachment an action for wrongfully procuring the writ to issue could not ordinarily be maintained. That decision has no application to a case where the original judgment in the attachment suit determines the validity of the writ and the action for damages is upon the undertaking.

The case of Ferguson v. Glidewell, 48 Ark. 195, 2 S. W. 711, is also cited as sustaining the dictum of the Oregon court in Drake v. Sworts. That case was a suit against the surety upon the bond given by the defendant in the attachment proceedings for the release of an attachment. When the bond had been given the property was released. Afterwards the surety on the bond for the release of the attachment filed an affidavit denying the statements contained in the affidavit of the plaintiff upon which the attachment was issued, and the attachment was discharged. The bond upon release of attachment was conditioned that the defendant would perform the judgment of the court. The plaintiff obtained a judgment, and then brought suit upon the bond given by the defendant to recover the amount of the judgment. The surety undertook to defend the action upon the ground that the attachment had been discharged. The Supreme Court held that the surety was absolutely liable on the undertaking, without reference to the question whether the attachment was rightfully or wrongfully issued, and that the attachment defendant was precluded by such an undertaking from controverting the grounds of the attachment. If this decision is authority upon any question before the court in the present case, it is that the defendants, as sureties on the attachment bond, are made absolutely liable on their undertaking by the judgment in the case. It is certainly not authority for the proposition that the sureties on the attachment bond are released by the discharge of the attachment. Fox v. Mackenzie (N. D.) 47 N. W. 386, and McLaughlin v. Wheeler (S. D.) 47 N. W. 816, simply hold that the defendants in the attachment suit, having given the statutory undertaking to discharge the attachment under which the property has been seized, could not afterwards have the attachment dissolved because improvidently issued. The last case was, however, before the Supreme Court upon a rehearing. McLaughlin v. Wheeler (S. D.) 50 N. W. 834. It appeared that the motion to discharge the attachment in that case was based upon the ground that the summons had not been served or published as required by law, and, this fact having been found by the court, its previous opinion was so far modified as to hold that, upon failure to serve or publish summons as provided by the statute, defendants were entitled as of right to the release of the attached property, and that therefore there was no consideration for the undertaking. In other words, while the surety on a bond for the release of an attachment may not, after giving such a bond and securing the release of the attachment, have the attachment dissolved because of a mere irregularity in the attachment proceedings, he may nevertheless show that the attachment proceedings were void. There is no principle of

waiver or law of estoppel in this case, or in any of these cases, that deprives the defendant in the attachment suit of his right of action against the plaintiff and the sureties on the attachment bond to recover damages sustained while the attachment is in force, and this we believe to be the law upon the subject. Cases apparently holding otherwise will be found, upon examination, to turn upon some differences in the statutes upon which they are based. The general rule, and the one applicable to the present case, is that the liability of the sureties on the attachment undertaking is measured by the conditions contained in that obligation. As said by the Supreme Court of Alabama in Tucker v. Adams, 52 Ala. 254, 256:

"An attachment is an extraordinary remedy, prescribed by the statute for extreme cases, and harsh in its operation. Its levy deprives the party against whom it issues as completely of the possession of his property as the levy of final process founded on a final judgment. The nature of the remedy required that the party against whom it issues should have a more ample remedy against its misuse or abuse than that which the common law afforded. The injury resulting from such misuse or abuse is more direct, and greater in degree, than that which follows the misuse or abuse of common-law process or of ordinary remedies. These do not authorize the seizure of property, nor do they involve imputations affecting more or less reputation and credit. Hence the statutes of this state have always required, as a condition precedent to the suing out of an attachment, bond with sufficient security, in a penalty of double the amount of the demand sued for, conditioned for the payment to the defendant of all such damages as he may sustain from the wrongful or vexatious suing out of the attachment; * * * the action on the bond for the recovery of damages being a plenary remedy for all the injury which could result if the cause did not exist."

The amended complaint alleges that by reason of the attachment the plaintiff lost the use, earnings, and profits of the property attached from the 19th day of September, 1900, to the —— day of June, 1901. In the first further and separate answer and defense the defendants set up the entire attachment proceedings, and among other things allege that on the 11th day of October, 1900, in pursuance of an order of court, the marshal released and discharged the attachment, and turned over and delivered to the plaintiff the property attached in the action, and that since that time the property has not been in the possession of the plaintiff in the attachment suit or in the possession of the marshal. While these proceedings do not constitute a complete defense to the action, they are relevant and material to the question of damages, and present an issue as to the period of time the property was under attachment. The allegations of this defense are therefore proper for that purpose. The demurrer to this defense was therefore properly overruled.

The second further and separate answer and defense alleges facts tending to show that the plaintiff in the attachment suit and the sureties on the attachment bond acted in good faith upon the advice of attorneys in the attachment proceedings, having an honest belief that the plaintiff in that action had a good and meritorious action against the defendant in the suit, and that the bond was not given to harass, annoy, or damage the defendant. If the present action had been brought for the misuse or abuse of process, and it had been alleged that the attachment proceedings had been prosecuted mali-

ciously and without probable cause, the facts alleged in this defense would have been relevant and material upon the question of exemplary damages. But the action is upon the undertaking, to recover the costs awarded to the defendant in the attachment suit and the damages which the defendant sustained by reason of the attachment, limited by the undertaking to the sum of $1,200. The good faith of the parties in prosecuting the attachment proceedings is therefore irrelevant and immaterial upon this question. Drake on Attachments, § 174. The demurrer to this defense should have been sustained.

The third further and separate defense and answer alleges the giving of the bond for release of the attachment on October 11, 1900, in the attachment suit, and alleges that by reason of the filing of such undertaking and the release of the attachment the defendant in that suit (plaintiff in the present action) waived all rights on the undertaking set forth in the amended complaint. We have sufficiently discussed this defense, and have determined that it cannot be sustained.

It follows that the judgment of the Circuit Court must be reversed, with directions to the court below to sustain the demurrer to the second and third further and separate defenses, with leave to the plaintiff to file a reply to the answer.