## JANSEN v. POLLASTRINE et al.

No. 4906.

District Court of Alaska.　Fourth Division.　Fairbanks.
Aug. 18, 1942.

Maurice T. Johnson, of Fairbanks, for plaintiff.
J. C. Winter, of Fairbanks, for defendants.

PRATT, District Judge.

In cause No. 4280 in this Court, wherein J. B. Pollastrine was plaintiff and Joseph M. Jansen was defendant, a trial was had, and at the end of plaintiff's testimony the Court granted a nonsuit on motion of the defendant and dismissed the action for the reason that the plaintiff had not proved any cause of action.

In said cause No. 4280, plaintiff Pollastrine caused an attachment writ to issue and be levied upon the property of the defendant Jansen.

In the present suit Jansen, as plaintiff, alleges the above-mentioned levy of the attachment upon his property and damages therefrom. He sets forth the undertaking in attachment given by J. B. Pollastrine, as principal, and Jack Tobin and Albert F. Bernard, as sureties, to obtain the issuance of the above-mentioned writ of attachment. This suit is upon said undertaking.

Plaintiff sets forth, in his complaint, the above-mentioned facts as to the involuntary nonsuit in said cause, but nowhere alleges that the attachment was wrongful or without sufficient cause.

A demurrer to the complaint has been submitted on the ground that the same fails to constitute a cause of action.

Plaintiff Jansen maintains that the judgment of nonsuit above mentioned conclusively shows that the attachment was wrongful and without sufficient cause.

The Alaska statute as to the undertaking to be filed to procure a writ of attachment, to wit, section 3510, Compiled Laws of Alaska, 1933, Act of Congress of June 6, 1900, 31 Stat., page 354, section 137, was copied from the laws of Oregon of October 11, 1862, section 146, Hill's Annotated Laws.

In Drake v. Sworts et al., 1893, 24 Or. 198, 33 P. 563, 564, Sworts and Miller had levied an attachment upon Drake's property. In the trial that resulted, Drake obtained a judgment for the sum of $419.10 as costs and disbursements, and brought an action upon the attachment undertaking to recover the same.

The defendants Sworts et al. contended that the undertaking extended only to expenses as may have been incurred on account of the attachment and did not make the signers liable for all the costs that might be adjudged to the defendant. The Court held that under section 146 of the Code the undertaking made the signers liable: "(1) That the

plaintiff will pay all costs, which, of course, includes disbursements, that may, by the court in which the action is tried, be adjudged to the defendant; and (2) if the attachment is wrongful, and without sufficient cause, to pay such damage as the defendant may sustain by reason of the attachment." Followed in Officer v. Morrison et al., 1909, 54 Or. 459, 102 P. 792.

In Mitchell et al. v. Silver Lake Lodge, etc., 1896, 29 Or. 294, 45 P. 798, Mitchell et al. were suing for damages by reason of an attachment, issued at the instance of Silver Lake Lodge, as plaintiff, in another case. On motion of the attachment defendant, the Court dissolved the attachment. The complaint alleged that the attachment was wrongful and without sufficient or any cause. The defendants contended that the complaint did not state a cause of action because it did not allege that the attachment was malicious. The Court held: That an action on the undertaking which alleged merely that the attachment was wrongful and without sufficient cause (Hill's Ann.Laws, Ore., section 146) was sufficient, but that the undertaking set out in the complaint was signed only by the sureties and not by the defendant, and hence the remedy was not predicated upon the undertaking. The Court further said:

"The rule is well settled that upon the termination of a civil action in favor of the defendant the costs and disbursements awarded him by law are considered to be an adequate compensation for his injury, and a sufficient punishment of the plaintiff for prosecuting an unfounded claim. * * * If, however, the defendant has been arrested, or his property attached in an action which terminated in his favor, he has sustained a special injury, which cannot be compensated by the costs and disbursements prescribed by statute, and, if such action were instituted through malice, and prosecuted without probable cause, upon the common-law theory that wherever there is an injury there is also a remedy, the defendant may maintain an action of malicious prosecution to recover the damages sustained. * * *

"The rule appears to be general that in all actions brought by the defendant for the recovery of damages resulting from an unlawful attachment of his property * * * except when instituted upon the undertaking, * * * the form of action is case, and not trespass * * * in which malice on common-law principles is indispensable to its maintenance. * * * So in the case at bar the allegation and proof of the attachment was not even prima facie evidence of malice or want of probable cause * * *."

In Sannes v. Ross, 1886, 105 Ind. 558, 5 N.E. 699, the Indiana statute required an undertaking for an attachment writ wherein the signers became liable if the attachment plaintiff failed to duly prosecute the proceedings in attachment. It was held that in this suit for damages from the attachment wherein the attachment plaintiff had taken a personal judgment without foreclosing the attachment, such judgment, in itself, showed a failure to duly prosecute the proceedings in attachment according to the condition of the bond as the taking of a personal judgment constituted a dismissal or abandonment of the attachment proceedings.

In Vurpillat et al. v. Zehner et al., 1891, 2 Ind.App. 397, 28 N.E. 556, 557, section 917, Revised Statutes of 1881, provided: " 'The plaintiff * * * shall execute a written undertaking * * * to the effect that the plaintiff will duly prosecute his proceeding in attachment, and will pay all damages which may be sustained by the defendant, if the proceedings of the plaintiff shall be wrongful and oppressive.' " Nt was held that in this action on the undertaking, seeking actual damages only, where a failure to prosecute the proceedings in attachment was shown by the fact that the attachment was dismissed, evidence that a ground of attachment really existed at the commencement of the attachment suit was not admissible in defense.

When Congress passed the law of Alaska as to attachment bonds, it presumably knew of the laws of Indiana as to attachment bonds and of the interpretation thereof by its courts. It is significant, therefore, that Congress did not provide that an attachment bond in Alaska should make

the signers covenant that the plaintiff should duly prosecute his attachment.

■ Presumably, also Congress knew of the interpretation of the attachment laws of Oregon, which it adopted for Alaska. The decisions of the Supreme Court of Oregon, above mentioned, were inferentially approved as correct interpretations of Section 146, Hill's Annotated Laws, relating to an undertaking in attachment when Congress adopted that section as a law of Alaska.

Plaintiff Jansen places much reliance upon the case of Anvil Gold Mining Co. v. Hoxsie et al., 9 Cir., 1903, from Alaska, 125 F. 724, 727, 2 Alaska Fed. 188, in which the Court says: "If the attachment suit terminates by a finding in favor of the defendant on an issue as to the truth of the facts alleged as the ground for the attachment, then the judgment conclusively establishes that the attachment was wrongfully obtained; and the same result follows if, when the attachment was obtained, there was no debt due from the defendant to the plaintiff. * * * "

The Court further says: "It is the final judgment in the case that is to determine the liability of the obligors upon the attachment undertaking."

It appears that Lee, the plaintiff in the attachment suit against the Anvil Gold Mining Company, had no cause of action against the defendant and that judgment was entered in favor of the defendant for $30 and costs. There was a final judgment and not a mere judgment of nonsuit in that case, so it is not authority for the contention of the plaintiff Jansen in this case.

■ Section 3670, Compiled Laws of Alaska, 1933, provides: "When a judgment of nonsuit is given, the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause." Thus, without doubt, a judgment of nonsuit is not a final judgment, and is not a determination of the truth of the facts alleged as a cause of action.

The judgment of nonsuit, however, definitely ends the particular suit in which it is entered.

The argument presents itself that the plaintiff either had no cause of action or was negligent in failing to prove the same and that, if defendant suffered damages, the plaintiff should pay them.

■ At common law, whenever an injury resulted from the issuance of judicial process in a civil action, a person procuring its issuance incurred no responsibility, provided he acted upon an honest conviction that the remedy was necessary to the enforcement of a legal right. 2 R.C.L. 896.

■ An action for malicious prosecution in a criminal case was recognized at common law, and when attachment was permitted by the statute it was declared to be the law "that the malicious suing out of the writ of attachment should give rise to a cause of action equally with and analogous to the malicious prosecution of a criminal prosecution." 2 R.C.L. 897.

■ The common law, except as modified by statute, is in force in Alaska. Section 3271, C.L.A., 1933. It appears that an attachment defendant, suffering damages from the attachment and bringing suit against the attachment plaintiff, could not state a cause of action without alleging malice in the levy of the attachment. Mitchell et al. v. Silver Lake Lodge, etc., 1896, 29 Or. 294, 45 P. 798.

As a plaintiff at common law was not liable for damages from a wrongful attachment unless he pursued it maliciously, it does not appear out of the way that his bondsmen, under the statute, on an undertaking in attachment should be limited to damages incurred where the attachment was wrongful or without sufficient cause.

In cause No. 4280, the sureties undertook "that the plaintiff above named will pay all costs that may be adjudged to the above named defendant and all damages that he may sustain by reason of such attachment if the same be wrong-

ful or without sufficient cause, not exceeding the sum of $1900.00."

" * * * an attachment is not wrongful within the meaning of statutes authorizing a recovery of damages resulting from wrongful attachment merely because it was dissolved for defects in the form of proceedings, or for mere omissions, irregularities, or informalities in issuing the writ." 7 C.J.S., Attachment, § 517, pages 664, 665.

To the same effect is Hall v. Carroll, Tex.Civ.App. 1934, 67 S.W.2d 1068.

In Vesper v. Crane Co. et al., 1913, 165 Cal. 36, 130 P. 876, 878, L.R.A.1915A, 541, it was held: " 'The general rule is well settled in this state, following the common-law doctrine, that no action for damages can be prosecuted against a plaintiff in an action from the fact per se that the action was unsuccessful or abated. The action must have been prosecuted maliciously and without probable cause, or the plaintiff cannot be made liable for bringing it. * * * ' "

In Wise v. Vaughan, 1931, 160 Wash. 505, 295 P. 126, 127, the attachment had been dismissed by the Court, but not because of any failure of plaintiff's cause of action. It was held in the suit for damages from the attachment: "The ground upon which the attachment was issued was therefore true. It cannot be held under these facts that the attachment was wrongfully sued out, and there was no reasonable cause to believe the ground upon which the writ was issued was untrue, which was necessary to sustain a judgment on the attachment bond, as provided in section 654. * * * the attachment was based upon a ground which was in fact true, and the supporting affidavits completely met the statutory requirement. There was no liability on the attachment bond."

In Taylor v. Fluharty et al., 1922, 35 Idaho 705, 208 P. 866, on page 870, paragraph 6, the court states: "To be wrongful, within the provisions of the statute, none of the statutory grounds for attachment must exist."

In Rowe v. Crutchfield, Tex.Civ.App., 1914, 168 S.W. 444, it was held that the showing that an attachment was quashed did not constitute proof that it was wrongfully levied.

In Cahoon v. Hoggan, 1906, 31 Utah 74, 86 P. 763, a suit for damages for wrongful levy of an attachment, the complaint did not state that the attachment was wrongful or without probable cause. It was held that it stated no cause of action.

In 7 C.J.S., Attachment, § 545, page 674, it is stated: "The declaration or complaint in an action for wrongful attachment must show that the attachment has been wrongfully sued out and it must state every material fact constituting the cause of action."

In 2 R.C.L., page 887, it is stated: "The general rule is that the contract of a surety on a bond given in attachment proceedings is to be construed strictly, and not to be extended beyond the fair scope of its terms."

■■ It appears, therefore, that the sureties are liable only if the attachment was wrongful and without probable cause. It further appears that the judgment of nonsuit against the plaintiff is not equivalent to an allegation that the attachment was wrongful and without probable cause.

The demurrer should be sustained and an order may be entered accordingly.