Points Decided.

(August 1, 1922.)

M. D. TAYLOR, Doing Business as IDAHO FOUNDRY & MACHINE COMPANY, Respondent, v. H. M. FLU-HARTY and L. W. BISHOP, Appellants.

[208 Pac. 866.]

PROMISSORY NOTE—DESCRIPTIO PERSONAE — INTENTION OF PARTIES — EVIDENCE—CONSTRUCTION OF INSTRUMENT—ATTACHMENT—CLERI-CAL ERRORS—DAMAGES FOR WRONGFUL ATTACHMENT—IMPROPER ITEMS OF DAMAGE.

1. Under the provisions of C. S., sec. 5887, and according to the law-merchant of which the statute is declaratory, any official designation added to the name of one signing a promissory note is merely *descriptio personae* and does not of itself relieve the party so signing from personal liability.

2. Where one signs a promissory note as agent for another, the *prima facie* presumption is that the words are merely *descriptio personae,* and that the one so signing is personally bound, yet evidence is admissible in an action between the original parties to show that it was not so intended, and that in fact the real intention was to bind the principal whose name was disclosed upon the face of the instrument.

3. C. S., sec. 5887, is not to be taken as changing the common-law rule permitting the consideration of a negotiable instrument, the capacity in which it was signed and the conditions under which it was delivered to be shown as between the original parties and those having knowledge of the facts relied upon to constitute a defense.

4. Where a promissory note is written upon the letter-head of "Smith Manufacturing and Irrigating Co." and signed by five persons with the words "president," "vice-president," "treasurer," "secretary," and "director" appended to the signatures, respectively, with the seal of the corporation to the left of such signatures, *held,* that an ambiguity arises as to the capacity in which the makers have signed, for which a resort to parol evidence is admissible, as between the original parties to the note, to determine their actual intention.

Publisher's Note.

4. Liability of person signing note of corporation as officer, see note in Ann. Cas. 1917D, 568.

5. The term "wrongful" within the purview of C. S., sec. 6781, relates to the issuance of an attachment upon a cause of action not included in C. S., sec. 6779, or where the statements in the affidavit are false, and not to mere irregularities in the attachment papers themselves, even though the attachment has been dissolved because the proceedings have been defective.

6. Clerical errors or irregularities committed in the preparation of attachment papers do not render the plaintiff on attachment proceedings liable in damages for wrongful attachment.

7. Loss of time incident to defending an attachment which is afterward dissolved is not a recoverable element of damages, neither is interest upon an attached bank account, during the time such account is subject to the attachment.

8. *Held,* that appellant failed to prove any of the material allegations of his cross-complaint, and that there was a total lack of evidence to support a judgment in his favor, either for general or special damages.

9. *Held,* that the evidence in this case is not sufficient to support a judgment for malicious attachment without probable cause, or for a wrongful attachment within the purview of C. S., sec. 6781, for which the bond would be liable.

APPEAL from the District Court of the Tenth Judicial District, for Nez Perce County. Hon. Wallace N. Scales, Judge.

Action upon a promissory note. Judgment for plaintiff. *Reversed.*

Benjamin F. Tweedy and Otto D. Burns, for Appellants.

In Idaho there seems to be no difference as to the effect and validity of a writ of attachment, or as to its rightfulness or wrongfulness between an insufficient and a false affidavit, for in either case the writ is issued without jurisdiction and therefore wrongfully issued. (*Murphy v. Montandon,* 3 Ida. 325, 35 Am. St. 279, 29 Pac. 851; *Merchants' Nat. Bank v. Buisseret,* 15 Cal. App. 444, 115 Pac. 58; *Kerns v. McAulay,* 8 Ida. 558, 69 Pac. 539; *Pajaro Valley Bank v. Scurich,* 7 Cal. App. 732, 95 Pac. 911.)

Publisher's Note.
7. Measure of damages recoverable for wrongful levy under writ of attachment, see note in Ann. Cas. 1915B, 1219.

A writ of attachment issued for a greater amount than that stated in the attachment affidavit is void, and on motion must be dissolved. (*Finch v. McVean*, 6 Cal. App. 272, 91 Pac. 1019; *Baldwin v. Napa & Sonoma Wine Co.*, 137 Cal. 646, 70 Pac. 732; *De Leonis v. Etchepare*, 120 Cal. 407, 52 Pac. 718.)

"When an attachment is for any reason void, attachment plaintiff will be a trespasser *ab initio* and liable to attachment defendant for any damages resulting therefrom." (6 C. J. 494; Shinn, Attachment and Garnish., sec. 8, pp. 10 and 11.)

The attachment defendant has a right to recover for the value of the time used in consulting and employing his lawyer, and time otherwise devoted to the matter of getting the attachment dissolved and set aside. (*Tullis v. McClary*, 128 Iowa, 493, 104 N. W. 505; *Higgins v. Mansfield*, 62 Ala. 267.)

Long before adoption of the statute, the placing of the corporate seal where it stamps the name of the corporation upon a note was such a complete disclosure of the principal, where there were words following the names of individuals, describing them as officers of a corporation, that the note became exclusively the obligation of the corporation. (*Means v. Swormstedt*, 32 Ind. 87, 2 Am. Rep. 330; *Miller v. Roach*, 150 Mass. 140, 22 N. E. 634, 6 L. R. A. 71; *Hovey v. Magill*, 2 Conn. 680; 1 Par. Con., sec. 97; Angell & Ames on Corp., sec. 294; Story, Prom. Notes, sec. 69; *New England Electric Co. v. Shook*, 27 Colo. App. 30, 145 Pac. 1002.)

"If there is sufficient appearing on the face to make it doubtful whether it was intended as a personal or as a corporate obligation, parol evidence is admissible to show its true character." (Tiedeman on Commercial Paper, sec. 123, p. 197; *Pratt v. Beaupre*, 13 Minn. 187, 190; *Devendorf v. West Virginia Oil & O. L. Co.*, 17 W. Va. 135; *Richmond etc. R. Co. v. Snead*, 19 Gratt. (Va.) 354, 100 Am. Dec. 670; *McClellan v. Reynolds*, 49 Mo. 312, 314; *Hager v. Rice*, 4 Colo. 90, 94, 34 Am. Rep. 68; *Mechanics'*

*Bank v. Bank of Columbia,* 5 Wheat. (U. S.) 326, 337, 5
L. ed., 100.)

Parol evidence is admissible where there is ambiguity to
show that the person signing by representative description
is not personally liable on the note. (*Bean v. Pioneer Min.
Co.,* 66 Cal. 451, 56 Am. Rep. 106, 6 Pac. 86; *Kline v. Bank
of Tescott,* 50 Kan. 91, 34 Am. St. 107, 31 Pac. 688, 18
L. R. A. 533; *Keidan v. Winegar,* 95 Mich. 430, 54 N. W.
901, 20 L. R. A. 705; *Deering v. Thom,* 29 Minn. 120, 12
N. W. 350; *Janes v. Citizens' Bank of North Enid,* 9 Okl.
546, 60 Pac. 290; *Small v. Elliott,* 12 S. D. 570, 76 Am. St.
630, 82 N. W. 92.)

Parol evidence · is admissible to charge a principal am-
biguously indicated, and that it was the entire intention to
charge only the principal ambiguously indicated. (*Benham
v. Smith,* 53 Kan. 495, 36 Pac. 997; *Southern Pac. Co. v.
Von Schmidt Dredge Co.,* 118 Cal. 368, 50 Pac. 650; *Miller
v. Way,* 5 S. D. 468, 59 N. W. 467.)

Since the instant action is between the original parties to
the note, parol evidence as offered was admissible beyond
all doubt. (*Metcalf v. Williams,* 104 U. S. 93, 26 L. ed.
665; *Kean v. Davis,* 21 N. J. L. 683, 47 Am. Dec. 182; *Hicks
v. Hinde,* 9 Barb. (N. Y.) 528; *Dessau v. Bours,* 1 McAll.
20, Fed. Cas. No. 3825; *La Salle Nat. Bank v. Tolu Rock
etc. Co.,* 14 Ill. App. 141.)

The word "wrongfully," as used in the statute, means
that the writ was not lawfully issued; "that the act was
done in violation of right or without authority of law."
(*State v. Nease,* 46 Or. 433, 80 Pac. 897.)

Daniel Needham, S. O. Tannahill and R. D. Leeper, for
Respondent.

The word "wrongful" in the statute refers to a violation
of sec. 6779 by the attachment plaintiff; that the attach-
ment was issued upon a cause of action not included in that
section; or that the statements in the affidavit are false. It
does not include within its purview mere "irregularities"
in the attachment papers. (6 C. J. 498, par. 1177.)

A dissolution for defects in the affidavit does not of itself give an action for wrongful attachment. (*Sharpe v. Hunter,* 16 Ala. 765; *Boatwright v. Stewart,* 37 Ark. 614; *Petty v. Lang,* 81 Tex. 238, 16 S. W. 999; *Baines v. Ullman,* 71 Tex. 529, 9 S. W. 543; *Jandt v. Deranleau,* 57 Neb. 497, 78 N. W. 22.)

"The mere fact that an attachment was quashed does not justify a finding that it was wrongfully issued and levied." (*Rowe v. Crutchfield* (Tex. Civ.), 168 S. W. 444.)

"Loss of time incident to defending against the attachment is not an element of damages." (*Craddock v. Goodwin,* 54 Tex. 578; *Lang v. Fritz* (Tex.), 38 S. W. 233.)

"Interest is not recoverable as damages." (*Perston v. Slocomb,* 1 La. Ann. 382; *Addison v. Sujette,* 60 S. C. 58, 38 S. E. 229; *Fullerton Lumber Co. v. Spencer,* 81 Iowa, 549, 46 N. W. 1058.)

Counsel fees for the defense of the principal action cannot be claimed as damages. (*Moseley v. Fidelity Deposit Co.,* 33 Ida. 37, 189 Pac. 862; 6 C. J. 545, sec. 1335.)

"A note in the form 'We promise to pay,' signed by officers of a corporation, to whose names are added their respective official titles, is *prima facie* their individual note and binds them personally, although the name of the corporation is printed in the margin or caption thereof." (8 C. J. 164; *Merchants' Nat. Bank v. Clark,* 139 N. Y. 314, 36 Am. St. 710, 34 N. E. 910; *Casco Nat. Bank v. Clark,* 139 N. Y. 307, 36 Am. St. 705, 34 N. E. 908; *First Nat. Bank v. Wallis,* 84 Hun, 376, 32 N. Y. Supp. 382; Id., 156 N. Y. 663, 50 N. E. 1117; *First Nat. Bank of City of Brooklyn v. Stuetzer,* 80 Hun, 435, 30 N. Y. Supp. 83; *Union Collection Co. v. Oliver,* 23 Cal. App. 318, 137 Pac. 182; *Daniel v. Glidden,* 38 Wash. 556, 80 Pac. 811; *Savings Bank of San Diego County v. Central Market Co.,* 122 Cal 28, 54 Pac. 273; *San Bernardino Nat. Bank v. Anderson,* 3 Cal. Unrep. 771, 32 Pac. 168.)

"If a person merely adds to the signature of his name, whether agent, trustee, treasurer, etc., without disclosing his principal, he is personally bound. The appendix is re-

garded as a *descriptio personae.*" (*Metcalf v. Williams,* 104 U. S. 93, 26 L. ed. 665; *Brunswick etc. Co. v. Boutell,* 45 Minn. 21, 47 N. W. 261; *Saul v. Southern Seating etc. Co.,* 6 Ga. App. 843, 65 S. E. 1065; *Hobson v. Hassett,* 76 Cal. 205, 9 Am. St. 193, 18 Pac. 320.)

In notes which recite that "We promise to pay" without disclosing in the body thereof that it is made for and on behalf of a principal, the makers thereof are liable even though they describe themselves as officers, etc. (*Sturdivant v. Hull,* 59 Me. 172, 8 Am. Rep. 409; *Coburn v. Amega Lodge A. F. & A. M.,* 71 Iowa, 581, 32 N. W. 513; *Andres v. Kridler,* 47 Neb. 585, 66 N. W. 649; *McClure v. Livermore,* 78 Me. 390, 6 Atl. 11; *Davis v. England,* 141 Mass. 587, 6 N. E. 731; *Rowe v. Table Mountain Water Co.,* 10 Cal. 441; *Western Wheeled Scraper Co. v. McMillen,* 71 Neb. 686, 99 N. W. 512.)

The appearance of the name of the corporation in the margin or at the top of the note does not affect the liability of the signature. (*Casco Nat. Bank v. Clark, supra*; *Merchants' Nat. Bank v. Clark, supra*; *First Nat. Bank v. Wallis,* 150 N. Y. 455, 44 N. E. 1038; *Tama Water Power Co. v. Ramsdell,* 90 Iowa, 747, 52 N. W. 209, 57 N. W. 631; *Menz Lumber Co. v. E. J. McNeeley & Co.,* 58 Wash. 223, 108 Pac. 621, 28 L. R. A., N. S., 1007.)

Parol evidence is not admissible to vary the terms of the instrument when there is no disclosure of the principal. (*San Bernardino Nat. Bank v. Anderson, supra; Toon v. McCaw,* 74 Wash. 335, 133 Pac. 469, L. R. A. 1951A, 590; *Conner v. Clark,* 12 Cal. 168, 73 Am. Dec. 529; *Chamberlain v. Pacific Wool Growing Co.,* 54 Cal. 103; *Yates v. Spofford,* 7 Ida. 737, 97 Am. St. 267, 65 Pac. 501.)

BUDGE, J.—This is an action upon a promissory note, which is written upon a letter-head of respondent company, with the exception of the words "Smith Manufacturing & Irrigating Co," which are printed thereon with a rubber stamp. Aside from the matter contained in the letter-head, the document reads as follows:

"Smith Manufacturing & Irrigating Co.

"$327.00                     Lewiston, Idaho, Jan. 21, 1918.

"Thirty days after date for value Received We promise to pay to Idaho Foundry & Machine Co. Three Hundred and Twenty Seven Dollars. Without interest if paid when due. Interest at Eight per cent per annum if not paid when due.

"21537

"(Signed)    CHAS. V. SMITH, President,
            "H. M. FLUHARTY, Vice-President,
            "HARVEY J. METCALF, Treasurer,
            "L. W. BISHOP, Secretary,
            "PHIL. J. PEARL, Director.

"[Smith Manufacturing & Irrigating Co.  Corporate Seal. Lewiston, Idaho.]"

Neither party to this action has suggested that the foregoing obligation is not a negotiable instrument, in that it is not payable to order or bearer. In fact, the case appears to have been tried as though the instrument in question were an ordinary negotiable note, and the questions raised in regard to it will therefore be considered on the theory adopted by counsel.

All of the signers of the note were made parties defendant in the complaint, but service was had only upon appellants Fluharty and Bishop, and Chas. V. Smith, who died before the action was tried and against whom no recovery was sought.

Appellant Bishop defaulted, by failing to demur or answer within the time limited in the summons, and default judgment was had against him. A motion made to vacate the default judgment was denied, and there is nothing in the record which would justify this court in disturbing the action of the trial court in this regard.

Appellant Fluharty filed an answer and cross-complaint. In the answer he admits the execution and delivery of the note but alleges that it was executed for and on behalf of the Smith Manufacturing & Irrigating Co., and denies individual liability. In the cross-complaint he alleges that re-

spondent unlawfully, wrongfully and maliciously, with intent to injure cross-complainant and force him to pay a note which he never executed and did not owe, caused a writ of attachment to be issued and levied upon $365 in the Bank of Gifford, and upon real property of the value of $16,000, belonging to cross-complainant, to secure the payment of $327; that N. D. Taylor aided and abetted in making said levy; that by reason of said unlawful, wrongful and malicious attachment cross-complainant was compelled to employ an attorney to dissolve the attachment, whose services were worth $100; that he was deprived of the use of $365 in the Bank of Gifford, and therefore seeks to recover interest for the same in the sum of $11.69; for loss of time in securing the dissolution of the attachment in the sum of $10; and general damages in the sum of $400.

The court instructed the jury to return a verdict in favor of respondent for the amount of the note, together with interest thereon at eight per cent per annum from its due date, and granted a motion for nonsuit upon appellant's cross-complaint.

This appeal is from the motion granting a nonsuit against appellant and from the judgment.

Appellant makes five assignments of error, which attack the action of the court in overruling a motion for nonsuit made at the close of respondent's evidence; in sustaining objections to the introduction of evidence to show that the note sued on was the obligation of the Smith Manufacturing & Irrigating Company and not that of appellant; in holding as a matter of law that the note sued on showed on its face that it was the individual note of appellant; in sustaining respondent's motion for nonsuit against appellant's cross-complaint; and in instructing the jury to return a verdict against appellant.

The determination of this case would seem to involve a construction of C. S., sec. 5887, which is as follows: "Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of the principal, or in a representative capacity, he is not liable on

the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character without disclosing his principal, does not exempt him from personal liability.''

This section is section 20 of the Uniform Negotiable Instruments Law, as adopted by forty-five states, the District of Columbia, Alaska, Hawaii and the Philippine Islands. It is merely declaratory of the law-merchant, according to which the rule has long been settled that: ''In order to relieve an agent from liability upon an instrument executed by him within the scope of his agency and authority, he must express by some form of words that the writing is the act of the principal, though done by the hand of the agent, and a mere description of the general relation or office which the person signing the paper bears to another person or to a corporation, without indicating that the particular signature is made in the execution of the office and agency, is not sufficient to charge the principal, or exempt the agent from personal liability.'' (3 R. C. L., sec. 302, p. 1093.)

See *Pentz v. Stanton,* 10 Wend. (N. Y.) 271, 25 Am. Dec. 558; *Bank of Rochester v. Monteath,* 1 Denio (N. Y.), 402, 43 Am. Dec. 681; *Guthrie v. Imbrie,* 12 Or. 182, 53 Am. Rep. 331, 6 Pac. 664; *Rand v. Hale,* 3 W. Va. 495, 100 Am. Dec. 761, 42 L. R. A., N. S., 32, note.

Any official designation added to the name of one signing a negotiable instrument is merely *descriptio personae* and does not *of itself* relieve the party so signing from personal liability on the instrument. (*Drake v. Flewellen,* 33 Ala. 106; *Anderson v. Pearce,* 36 Ark. 293, 38 Am. Dec. 39; *Conner v. Clark,* 12 Cal. 168, 73 Am. Dec. 529; *Chamberlain v. Pacific Wool Growing Co.,* 54 Cal. 103, 106; *Chadsey v. McCreery,* 27 Ill. 253; *Thurston v. Mauro,* 1 G. Greene (Iowa), 231; *Morell v. Codding,* 86 Mass. 403; *Fowler v. Atkinson,* 6 Minn. 578; *Savage v. Rix,* 9 N. H. 263; *Pentz v. Stanton, supra; Collins v. Buckeye State Ins. Co.,* 17 Ohio St. 215, 93 Am. Dec. 612; *Ohio Nat. Bank v. Cook,* 38 Ohio St. 442; *Robinson v. Kanawha Valley Bank,* 44 Ohio St. 441, 58 Am. Rep. 829, 8 N. E. 583; *Barnisel v. Com-*

*mercial Nat. Bank,* 14 Ohio C. C. 124; *Bank v. Looney,* 99 Tenn. 278, 295, 63 Am. St. 830, 42 S. W. 149, 38 L. R. A. 837; *Rand v. Hale, supra; Fidelity Ins. Trust & S. D. Co. v. Shenandoah Valley R. Co.,* 33 W. Va. 761, 11 S. E. 58; *Merchants' Nat. Bank v. Hudkins,* 34 W. Va. 370, 12 S. E. 495; *Crim v. England,* 46 W. Va. 480, 76 Am. St. 826, 33 S. E. 310.)

It is a fundamental rule of construction that the intention of the parties is the criterion upon which rests the determination of their respective liabilities (*Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133), in regard to all contracts, bills of exchange and promissory notes as well as others. (*Hypes v. Griffin,* 89 Ill. 134, 31 Am. Rep. 71; *Traynham v. Jackson,* 15 Tex. 170, 65 Am. Dec. 152.) And if from the whole instrument it can be collected that the true object and intent of it are to bind the principal, and not to bind the agent, courts should adopt that construction of it, however informally it may be expressed. (*Means v. Swormstedt,* 32 Ind. 87, 2 Am. Rep. 330, and note; 6 Ann. Cas. 1001, note.)

Thus far there is no great conflict among the authorities, and while it is conceded that if there is anything on the face of the paper which suggests a doubt as to the party bound parol evidence is admissible between the original parties to establish the real intent (*Burkhalter v. Perry,* 127 Ga. 438, 119 Am. St. 343, 56 S. E. 631), yet the view still persists in some jurisdictions that an instrument such as that here sued upon does not show such an ambiguity as to warrant the introduction of extrinsic evidence. (*Second Nat. Bank of Akron v. Midland Steel Co.,* 155 Ind. 581, 58 N. E. 833, 52 L. R. A. 307; *Sparks v. Dispatch Transfer Co.,* 104 Mo. 531, 24 Am. St. 351, 15 S. W. 417, 12 L. R. A. 714.)

According to the sounder doctrine and the modern view, where one signs as agent of another, the *prima facie* presumption is that the words are merely *descriptio personae,* and therefore that the one so signing is personally bound, yet it may be shown in an action between the original parties

that it was not so intended, and that, in fact, the real
intention was to bind the principal whose name was dis-
closed in the signature of his agent, or who was well known
by the payee to be the real party to be bound. (*Pease v.
Pease,* 35 Conn. 131, 95 Am. Dec. 225; *Burkhalter v. Perry,*
127 Ga. 438, 119 Am. St. 343, 56 S. E. 631; *Kline v. Bank
of Tescott,* 50 Kan. 91, 34 Am. St. 107, 31 Pac. 688, 18
L. R. A. 533; *Melledge v. Boston Iron Co.,* 5 Cush. (Mass.)
158, 51 Am. Dec. 59; *Hardy v. Pilcher,* 57 Miss. 18, 34 Am.
Rep. 432; *Webster v. Wray,* 19 Neb. 558, 56 Am. Rep. 754,
27 N. W. 644; *Reeve v. First Nat. Bank,* 54 N. J. L. 208,
33 Am. St. 675, 23 Atl. 853, 16 L. R. A. 143; *Traynham v.
Jackson, supra; Andrus v. Blazzard,* 23 Utah, 233, 63 Pac.
888, 54 L. R. A. 354.)

In Brannan on The Negotiable Instruments Law, 3d ed.,
p. 70, it is said:

"The plain language of this section indicates that it was
the intention . . . . to clear up the unnecessary and unpar-
donable confusion caused by the failure of some of the
courts to . . . . recognize mercantile usage. Much of the
difficulty found in this subject is purely manufactured and
would not trouble a business man for a moment. . . . . In
17 Banking Law Journal, 305, 306, it was properly said that
'nine business men out of ten would regard such a note as
that of the company,' and it would hardly be an exaggera-
tion to include the tenth man. . . . .

"In some states where the name of a company is printed
at the head or on the margin of the instrument and the
note is signed 'A. B., Pres.,' for instance, the instrument
has been held to be sometimes presumptively, sometimes con-
clusively, the instrument of the company. (*Second Nat.
Bank v. Midland Steel Co.,* 155 Ind. 581, 58 N. E. 833, 52
L. R. A. 307.) See, also, *Carpenter v. Fransworth,* 106 Mass.
561, where the court said (p. 562): 'The court has always
laid hold of any indication on the face of the paper, how-
ever informally expressed, to enable it to carry out the
intention of the parties.'

"On the other hand, the contrary has been held in *Casco Nat. Bank v. Clark*, 139 N. Y. 307, 36 Am. St. 705, 34 N. E. 908, and *First Nat. Bank v. Wallis*, 150 N. Y. 455, 44 N. E. 1038. Some courts have treated the instruments in some of these cases as ambiguous and have admitted parol evidence to show the intention of the parties. . . . . It seems a narrow view and not in accordance with mercantile understanding to impose individual liability upon a signer who, being duly authorized to sign, discloses the name of a principal on the instrument, and indicates that he himself is an agent or officer, without regard to the form in which this is done. . . . . In most of the cases decided since the act, the courts have construed the act in this reasonable manner, but some courts unfortunately have seemed unwilling to depart from the old rule of the state, where it was different, and have held that the statute makes no change."

While the mere addition of words describing the signer as an agent, without disclosing his principal, does not relieve the signer from personal liability as to innocent purchasers for value, yet the statute is not to be taken as changing the common-law rule permitting the consideration and the conditions under which the instrument was delivered to be shown as between the original parties and those having notice of the facts relied upon as constituting a defense. The effect of this section is limited to putting the payee of the note in possession of the knowledge that in its execution and delivery no personal liability was intended to be assumed, and where the payee knows the maker is acting as an agent or trustee, the maker is not required to relieve himself of personal liability, to repeat to him in writing or orally information he already possesses. (*Megowan v. Peterson*, 173 N. Y. 1, 65 N. E. 738; *Paulson v. Boyd*, 137 Wis. 241, 118 N. W. 841; *Kerby v. Ruegamer*, 107 App. Div. 491, 95 N. Y. Supp. 408; Selover on Negotiable Instruments, 2d ed., sec. 25, pp. 32, 33.)

The statute does not abrogate the rule of evidence which permits a person signing to show that it was not the intention of the parties that he should be personally bound.

(*Phelps v. Weber*, 84 N. J. L. 630, 87 Atl. 469; *Jump v. Sparling*, 218 Mass. 324, 105 N. E. 878; *Myers v. Chesley*, 190 Mo. App. 371, 177 S. W. 326; *Dunbar Box & L. Co. v. Martin*, 53 Misc. Rep. 312, 103 N. Y. Supp. 91; Crawford, Negotiable Instruments, pp. 54, 55.)

It is true that in the note here sued upon the name ''Smith Manufacturing & Irrigating Co.'' is not·incorporated in the body of the note, nor does it appear at the usual place where signatures are found. It is, however, upon the face of the note, and when taken into consideration with the facts that the note also bears the seal of the corporation and that the various signers appended to their names the titles to corporate offices, it cannot be lightly ignored so long as the courts continue to give effect to the intention of the parties. Either we must utterly disregard both the name and seal of the corporation and the words describing the signers as agents and hold the latter personally liable notwithstanding these indications that the note was something other than the personal obligation of the signers, or recognize the fact that the name, seal and descriptive words, being upon the instrument at the time of its delivery and their exact purpose and meaning not being clear, create an ambiguity or uncertainty, admitting of resort to parol evidence as between the original parties, to determine their real intention. This rule is in harmony with other principles of law relating to defenses upon negotiable instruments between the original parties, and is in no way inconsistent with the provisions of C. S., sec. 5887.

From the record it appears that the attachment issued in this case was dissolved for two reasons; first, that the affidavit alleged ''that the attachment is not sought and the action is not prosecuted to hinder, delay or defraud any creditor of the defendant,'' but contained no allegation that the attachment was not sought nor the action prosecuted to hinder, delay or defraud any creditor of any one of the five defendants against whom the action was originally instituted, and, second, that the writ of attachment stated an amount greater than that stated in the affidavit.

This was an action upon an express contract for the payment of money, and respondent was entitled to have the property of appellant attached under the provisions of C. S., sec. 6779, and could not be held in damages in case he recovered judgment unless the attachment was wrongfully issued. It would seem that the term "wrongful" within the meaning of C. S., sec. 6781, relates to the issuance of an attachment upon a cause of action not included in sec. 6779, *supra,* or where the statements in the affidavit are false, rather than to mere irregularities in the attachment papers themselves. Clerical errors or irregularities committed in the preparation of the papers do not render the plaintiff in attachment liable in damages for wrongful attachment. The rule would seem to be as stated in 6 C. J., Attachment, sec. 1177, p. 498:

· "An attachment may be said to be wrongfully sued out where it is issued against a person who is not indebted to plaintiff in attachment and against whom plaintiff in attachment has no valid claim: . . . . where no grounds for attachment exist; where the statute forbids the issuance of an attachment for the enforcement of a claim for less than a specified amount, and the claim sued on is for less than that amount; or where attachment plaintiff's debt is amply secured, or he refuses to accept reasonable security. But an attachment is not shown to be wrongful by the mere fact that it is sued out for a greater amount than is actually due, although it has been said that where the disparity between the debt actually due and the amount for which the attachment is sued out is so great as to manifest an intention to abuse the remedy afforded by the extraordinary process of attachment, an action for both vexatious and wrongful use of the writ might possibly lie."

In *Storz v. Finklestein,* 48 Neb. 27, 66 N. W. 1020, which was followed in the case of *Jandt v. Deranleau,* 57 Neb. 497, 78 N. W. 22, the court said:

"In an action on an attachment bond, where the averments of the petition are put in issue by the answer, the burden is upon the plaintiff to establish that the writ was

wrongfully obtained; in other words, that the ground stated in the affidavit for attachment did not exist or was untrue. In case there is a failure to prove such fact, the suit must fail. It is not enough that it be shown that the attachment was dissolved, since the writ may have been discharged for omission or irregularities merely. It must further appear that the attachment was wrongfully issued; that is, no valid grounds existed for granting the writ.''

In *Storz v. Finklestein,* 50 Neb. 177, 69 N. W. 856, the court also said:

''The authorities generally hold that an attachment is not wrongfully obtained, unless it is shown that the plaintiff has no meritorious cause of action against the defendant, or, having such a cause of action, the ground stated in the attachment affidavit is untrue. The word 'wrongful' as used in the statute, does not apply to a dissolution of an attachment on account of defects in the form of the proceedings, or for mere omissions, irregularities, or informalities which the officer may have committed in the issuance of the process. . . . . We think the word 'improperly' as used in the statute, has a broader signification than a mere irregularity, and that it is insufficient to allege as a breach of the condition, although in the express words of the bond, that it was improperly issued. The breach should state with distinctness in what its impropriety consisted. It is only improperly issued when the plaintiff has no meritorious cause of action, of that class of actions in which the law authorizes a resort to the remedy against the defendant, or having such cause of action, the ground alleged in the affidavit for its issue is untrue, or not one of the grounds enumerated which must exist before it can be obtained. We do not think it was intended to cover a case where the plaintiff had a meritorious cause of action of the class for which an attachment may legally issue, and when the cause for its issuance is one of those specified in the statute, and such cause is true if the attachment was dissolved for some irregularity, or for some technical reason. The doctrine au-

nounced in the foregoing is stated with approval in Drake, Attachm., sec. 170 and Shinn, Attachm., secs. 183, 187.''

In *Sharpe v. Hunter,* 16 Ala., 765, the court observed that:

''By the wrongful suing out of the attachment is meant, not the omissions, irregularities, or informalities which the officer issuing the process may have committed in its issuance, but that the party resorted to it without sufficient ground.''

To be wrongful, within the provisions of the statute, none of the statutory grounds for attachment must exist. We think the correct rule is clearly stated in 6 C. J., Attachment, sec. 1299, p. 529, as follows:

''An attachment cannot be held to have been wrongful, within the meaning of statutes authorizing a recovery of damages resulting from wrongful attachments, merely because it has been dissolved on account of defects in the form of the proceedings, or for mere omissions, irregularities, or informalities in the issue of the writ.''

Appellant insists that the failure of respondent to allege in the affidavit that the action was not prosecuted to hinder, delay or defraud any creditor of any of the defendants, and the fact that the writ stated an amount greater than that stated in the affidavit, rendered the attachment void and the respondent a trespasser *ab initio.* While there may be authorities to the contrary, we are inclined to the view that these matters constitute irregularities and omissions merely and do not make the attachment wrongful within the purview of C. S., sec. 6781.

Moreover, appellant failed to prove any of the material allegations of his cross-complaint, and there was a total lack of evidence to support a judgment in his favor, either for general or special damages. Appellant testified that he spent ten days in procuring the dissolution of the attachment and fixed the value of his time at $2 per day. This time was spent in consulting with his attorney. Just how much time he devoted to the dissolution of the attachment and how much to the merits of the case he was unable to state.

Loss of time incident to defending an attachment which is afterwards dissolved is not a recoverable element of damages (*Craddock v. Goodwin,* 54 Tex. 578), neither is interest upon an attached bank account, during the time such account is subject to the attachment. (*Preston v. Slocomb,* 1 La. Ann. 382.)

Appellant further testified that he agreed to pay his attorney $100 for defending the whole case, and that he paid him $50 after the attachment was dissolved. The proof as to payment of any specific amount to the attorney for the dissolution of the attachment, as distinguished from the amount paid for the defense of the whole suit, is so indefinite and uncertain that it would not support a judgment, in the absence of a clear and definite agreement as to the amount actually agreed to be paid for that particular purpose.

We do not think the evidence is sufficient either to support a judgment for malicious attachment without probable cause or for a wrongful attachment within the purview of C. S., sec. 6781, for which the bond would be liable, and in reaching this conclusion we do not pass upon the question of whether there was a misjoinder of causes of action, one for tort against the plaintiff for malicious attachment, and the other an action upon the bond for wrongful attachment.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed. Costs are awarded to appellant.

McCarthy and Dunn, JJ., concur.