AUSTIN, NICHOLS AND COMPANY, INC. *vs.*
MORRIS GROSS.

First Judicial District, Hartford, March Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE AND KEELER, JS.

The Negotiable Instruments Law should receive a liberal construction in order to effectuate the uniformity of decisions, which was the prime purpose of its enactment, and to make it workable and serviceable in the important business to which it relates.

By § 20 of the Act (General Statutes, § 4378), it is provided that where the instrument contains, or a person adds to his signature, words indicating that he signs for a principal, or in a representative capacity, he is not liable if duly authorized; but that the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability. *Held* that parol evidence was admissible as to the signer's authority; and was also admissible —on the issue whether the instrument contained words indicating that he signed for or on behalf of a principal—to show the relations between the parties to it and all that was said and done at and preceding its delivery.

The defendant, who was the treasurer and principal stockholder of a grocery corporation, gave the plaintiff, in payment of a debt of the

corporation, a check signed in his own name, M. Gross, but containing the name of the corporation across its left-hand end. In a suit on the check against the defendant personally, the court excluded his evidence to show his authority to act for the corporation, and the circumstances under which he gave the check, including the fact that he had no personal account at the bank upon which the check was drawn, and that he personally received no consideration for the check. *Held* that as between the original parties to the check, the exclusion of this evidence was erroneous.

Whether such evidence would have been admissible had the rights of innocent purchasers been involved, *quære.*

All words upon any part of a promissory note are to be considered in determining who was the party obligated thereon.

Our decisions and those of other jurisdictions prior to the enactment of the Negotiable Instruments Act, while entitled to consideration, are not controlling; for the provisions of the Act itself must determine suits brought under it.

Argued March 8th—decided April 4th, 1923.

ACTION to recover the amount of a bank check signed by the defendant and payable to the order of the plaintiff, brought to and tried by the Court of Common Pleas in Hartford County, *Dickenson, J.;* facts found and judgment rendered for the plaintiff for $344, and appeal by the defendant. *Error and new trial ordered.*

The plaintiff is a corporation, engaged in the wholesale grocery business. The defendant was a retailer in that business, under the trade name of State Street Grocery Company, from December 21st to April, 1922, when the business was incorporated under the name of the State Street Grocery Company, Inc., and the plaintiff was duly informed of the incorporation. The defendant was the principal stockholder in this corporation. The plaintiff from time to time sold goods to this corporation. About July 10th, 1922, the plaintiff refused to sell goods to the State Street Grocery Company, Inc., until the goods theretofore delivered to it were paid for. Thereupon defendant, who was the treasurer of State Street Grocery Company, Inc., gave to plaintiff a check in the following form:—

State Street Grocery Co., Inc.
161 State St., Hartford, Conn.

Pallotti, Andretta & Company
Bankers
96 Windsor Street
Hartford, Conn., July 15, 1922.
Pay to the order of Austin, Nichols & Co., Inc.
$334 $\frac{86}{100}$, Three Hundred Thirty-four 86/100 Dollars.
M. Gross.

The check was duly presented for payment and has not been paid, nor has the account for which the check was given been paid. Between April, 1922, and the time this check was given, the plaintiff had no account against the defendant personally.

The defendant assigns as error the rulings excluding these questions asked of the defendant: " (Q) Did you have an account, Mr. Gross, in the Pallotti & Andretta Company in the name of the State Street Grocery, Incorporated? (Q) And who signed the corporate checks? (Q) Did you, Mr. Gross, individually receive any consideration for this check? (Q) Mr. Gross, how did the corporation authorize its bank to pay out the checks on its account? (Q) Did you owe anything personally to the Austin, Nichols Company?" Mr. Gross testified that plaintiff's representative asked him for payment of the account for the previous month, and that he told him: "We didn't have enough funds in the bank but I will give you a check dated ahead a few days," etc. Thereafter defendant's counsel inquired of defendant: " (Q) You say, Mr. Gross, you didn't have enough funds, whose funds or what funds do you mean? "

*Ralph M. Grant* and *Bernard J. Ackerman*, for the appellant (defendant).

*Ralph O. Wells*, with whom was *John P. Harbison*, for the appellee (plaintiff).

WHEELER, C. J.  All of the questions set forth in the statement were asked by defendant's counsel, as the parties agree, either for the purpose of proving the defendant's claim that this check was the check of State Street Grocery Company, Inc., and not the defendant's personal check, or for the purpose of proving the defendant's authority to act for the Company. Other rulings complained of are either bad in form or immaterial.

The plaintiff's objection was evidently based upon the ground that parol evidence was not admissible to prove these facts.  If parol evidence was admissible, the rulings were erroneous.  So that the single point for determination is whether parol evidence is admissible to prove that the signature—M. Gross—was not an individual signature, as it purported to be, but was the signature of State Street Grocery Company, Inc.

The decision must be based upon the terms of General Statutes, § 4378, which is a part of and identical with § 20 of the Negotiable Instruments Law as drafted by the Commissioners.  We should give to the sections of this law a liberal construction, so as to secure to them a reasonable meaning and to effectuate the intention of its framers and make it workable and serviceable to the important business to which it relates.  It is a codification of the law upon this subject and embraces all of the law to which its terms expressly or by necessary implication may be held to relate.  Its framers sought to adopt the best rule prevailing in this country.  Occasionally they have departed from their primary purpose and sought the rule elsewhere.  Section 20 (General Statutes, § 4378) was copied from the German Exchange Act, and some of its provisions are a departure from the prevailing rule in this country.  This section has been subjected to severe criticism, but it has outlived it, due to the

fact that the business world approves of it because it increases the negotiability of commercial paper and simplifies the proof in the recovery. Article by Charles L. McKeehan, published in Brannan's The Negotiable Instruments Law (3d Ed.) pp. 472, 494.

Cases arising under this law are to be decided without reference to the authority of prior decisions, either those of our own jurisdiction or elsewhere, except that in the construction of a given section of the Act "consideration should be given to the authorities upon which the section is based," or to those which will aid in the construction of the section. The not infrequent practice of courts to decide cases within the Act without reference to the Negotiable Instruments Law, has tended to impair the prime purpose of the law— uniformity in decision—, and also the tendency of courts to rest the case upon prior decisions and make this law an appendage of these, has tended in some jurisdictions to confuse the profession and complicate the law of commercial paper instead of making it clear, simple and certain as its framers intended. General Statutes, § 4378, of our Negotiable Instruments Law, which we are to construe, reads as follows: "Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

This section covers at least five classes of cases: 1. Where one adds to his signature to a negotiable instrument words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized.

2. By necessary implication from this statute, as Mr. Crawford and Professor Brannan have pointed out in their works on The Negotiable Instruments Law, it follows: Where one adds to his signature to a negotiable instrument words indicating that he signs for or on behalf of a principal or in a representative capacity, he is liable on the instrument if he was not duly authorized. 3. Where one adds to his signature to a negotiable instrument words describing him as an agent, or as filling a representative character without disclosing his principal, he will be personally liable. 4. By necessary implication it follows: Where one adds to his signature to a negotiable instrument words describing him as an agent or as filling a representative character, and does disclose his principal, he will not be personally liable. 5. Where the negotiable instrument contains words indicating that one has signed it for or on behalf of a principal, or in a representative capacity, he is not liable if he was duly authorized.

The questions involved in classes 1 and 2 are, whether the signature indicates that the signer signs for a principal or in a representative capacity or not, and whether he was duly authorized. These are facts to be ascertained from all the legitimate evidence in the case. If the instrument does not furnish the information from which a reasonable inference may be drawn, it must be obtained outside of this. Such evidence will not vary the contract, it will merely determine, or help to determine, what in fact the contract was. The prevailing rule at the time of the drafting of the Negotiable Instruments Law accorded with the rule of *Hovey* v. *Magill*, 2 Conn. 680, 682, a case where Magill placed under his signature to a note the words "Agent for the Middletown Manufacturing Company." Magill claimed upon the trial that he was not personally liable, and evidence was received, in support of his

claim, of a vote of the Company by which he was appointed the agent for transacting the business of the Company, that he had acted as such agent and had been in the constant practice of signing notes, as in the note in suit, and with the knowledge of the Company which had regularly paid such notes. Similar ruling was had in *Myers* v. *Chesley*, 190 Mo. App. 371, 379, 177 S. W. 326, and *Germania Nat. Bank* v. *Mariner*, 129 Wis. 544, 109 N. W. 574. The authority of the agent to sign must necessarily be proved outside the instrument, and concededly this may be done by oral as well as by written evidence.

The questions involved in classes 3 and 4 are, whether the signature does describe the signer as agent or in a representative character, and whether at the execution or delivery of the instrument the principal was disclosed. Any form of legal evidence which tends to prove such disclosure may be admitted. This may be done by proof of the circumstances occurring at the execution or delivery and known to the payee, or by any facts which legally tend to show that the payee had such knowledge at this time. Cases decided under the Negotiable Instruments Law where evidence was received as between the original parties on the question of whether disclosure of the principal was made at the time of delivery, are: *Megowan* v. *Peterson*, 173 N. Y. 1, 4, 65 N. E. 738; *Riordan & Co.* v. *Thornsbury*, 178 Ky. 324, 198 S. W. 920; *Phelps* v. *Weber*, 84 N. J. L. 630, 87 Atl. 469. The case of *Jump* v. *Sparling*, 218 Mass. 324, 105 N. E. 878, was placed under this class, but its facts bring it more appropriately under classes 1 and 2. The note was signed: J. H. Sparling, Treas. Stratton Engine Co. David F. Brown, Pres. Stratton Engine Co. In *Taylor* v. *Fluharty*, 35 Idaho, 705, 208 Pac. 866, the note sued on had the name of the Smith Manufacturing & Irrigating Co. at its head,

and was signed by different individuals with an official title after the name. The name of the corporation does not appear in the body of the instrument or in the signature. The note also bore the seal of the corporation. One of the grounds of appeal was the exclusion of the offer of evidence to show that the note sued on was the obligation of this Company. The court held that upon the face of the paper an ambiguity was created as to the party bound, and between the original parties parol evidence was admissible to establish the real intent. Other cases reach a like conclusion. The ground upon which they place the admission of such evidence, viz: the presence of an ambiguity, seems inadmissible in view of the terms of this provision which says that when the instrument contains words indicating the relation in which it was signed the signer is not liable if duly authorized. Under this, all that is necessary is to determine whether the instrument does contain such words or not. And parol evidence is admissible to show the relations between the parties to the note and all that was said and done at and preceding the delivery of the note. We had, prior to the enactment of the Negotiable Instruments Law, reached a like conclusion in *Hewitt* v. *Wheeler*, 22 Conn. 557, 563.

The instant case falls within the fifth class. Whether defendant, Gross, was authorized to sign or not, and whether the check contains words indicating that he signed for and in behalf of a principal, or in a representative capacity, might be proved by evidence outside the check for the purpose, as we have said, of carrying out the intention of the parties and establishing just what the contract was,—not to vary it but to ascertain it. Questions were excluded which, if admitted, might have tended to establish the authorization given by the Company to Gross to sign checks in his individual name,

and the practice of the Company in issuing checks so signed by defendant Gross. Technical objection of the best evidence was not made to these inquiries. We do not understand how the fact of authorization could be proved in any case where it was not established by the instrument, except by extraneous evidence. The body of the check does not contain any reference to the State Street Grocery Company as the drawer of the check.    But this section of the statute does not say that the words indicating the relation in which Gross signed the check must appear in the body of the check.    If words appear on any part of the check indicating that Gross signed in behalf of the State Street Grocery Company, that will be sufficient, whether the words appear at the head of the check or on its margin. All that is necessary between the original parties is, that these words should be such as to reasonably apprise, or put on notice, the payee, that it was or might be the check of the Company and not of Gross. By such proof the true contract is revealed and the intention of the parties effected.

While we do not find cases in their facts identical with the case before us, where the only signature on the note is that of an individual and the name of the person for whom he acts appears upon the note but not in its body, we regard the rulings made in the cases we cite under the other classes as practically controlling our immediate question, since the principle involved, especially as to classes 1 and 2, does not materially differ.

One of the cases which undoubtedly influenced the Commissioners in the adoption of this provision of § 20, was *Mechanics Bank* v. *Bank of Columbia*, 18 U. S. (5 Wheat.) 326, where a check was headed Mechanics Bank of Alexandria and signed Wm. Paton, Jr., and evidence was admitted to prove that Paton was the teller

of this bank, that the check was an official check cut out of the check book of the bank, and the money drawn thereon and applied to the benefit of the bank.

The cases on which the defendant relies are not in point, or were decided upon grounds conflicting with those adopted by us. In *Belmont Dairy Co.* v. *Thrasher,* 124 Md. 320, 92 Atl. 766, the note was signed Belmont Dairy Co., Inc., E. C. Thomas. The court held Thomas, who was an officer of the corporation, personally liable, because he had signed the note without the addition of his title, or other qualification. In the business world this signature would be regarded as prima facie that of the Belmont Dairy Company, and we are convinced that it was the intention of the framers of the Negotiable Instruments Law to permit parol evidence to be introduced in cases where the signature tended to indicate that it was made in a representative capacity. The case falls within class 1. In *Daniel* v. *Glidden,* 38 Wash. 556, 80 Pac. 811, the note was headed German American Investment Co., Inc., and signed Wm. H. Buttner. The court held: "The words 'German American Investment Co., Inc.,' at the top constitute no material part of the instrument." This holding, upon which was based its conclusion construing the Negotiable Instruments Law, is at variance with the great majority of authorities in related matters, which hold that such words, whether at the head or margin of the note or contract, are to be regarded as a part of it in order to determine who was the party obligated. *Taylor* v. *Fluharty,* 35 Idaho, 705, 208 Pac. 866; *Second National Bank* v. *Midland Steel Co.,* 155 Ind. 581, 58 N. E. 833; *Carpenter* v. *Farnsworth,* 106 Mass. 561.

The case decided is between the original parties to the note; we leave open the question when the rights

of innocent purchasers are involved, until it shall arise upon the record.

There is error and a new trial is ordered.

In this opinion the other judges concurred.