EDWIN V. HELLAWELL, as Receiver of the FIRST NATIONAL BANK OF HEMPSTEAD, Plaintiff, *v.* GARRETT BUSCH & SON, INC., and Others, Defendants.

Supreme Court, Nassau County, January 6, 1936.

*Ferdinand I. Haber,* for the plaintiff.

*Patterson, Christ & Griffin,* for the defendant Bertha Busch, individually.

McLaughlin (Alonzo G.), J. The plaintiff, receiver of the First National Bank of Hempstead, seeks to recover from Bertha Busch, individually, and as executrix of George P. Busch, deceased, the sum of $4,075 upon a promissory note made and delivered to the bank by defendant Garrett Busch & Son, Inc., and indorsed by Garrett Busch individually, and by the defendant Bertha Busch, as follows: " George P. Busch Estate by Bertha Busch Executrix."

The defendant Bertha Busch contests plaintiff's right to recover against her individually on such indorsement, and asserts by way of affirmative defenses: *First,* that on or about January 3, 1930, the defendant Garrett Busch & Son, Inc., made and delivered to the bank its promissory note for $10,000, payable in four months, and that the defendants Garrett Busch and George P. Busch were accomodation indorsers thereon. From time to time the maker made payments in reduction of the principal of such note, and the payment of the balance was extended and evidenced by renewal notes made by the maker and similarly indorsed by the defendant Garrett Busch and George P. Busch. On May 28, 1932, George P. Busch died, and the defendant Bertha Busch was appointed executrix of his estate. On July 22, 1932, a renewal note became due. The maker being unable to pay the same in full, again made a partial payment on account, and delivered a renewal note for the balance. Upon the bank's insistence, the renewal note was indorsed by Garrett Busch, and by " George P. Busch Estate by Bertha Busch Executrix." From time to time additional payments were made on account, and renewal notes given for the balance. All of such renewals were indorsed in like manner. The note in suit is the last of such renewals.

For a *second-* affirmative defense she alleges that when the first renewal note following the death of George P. Busch was made, and at the time of the indorsement of each subsequent renewal note, it was understood and agreed by her with the bank that in no event was she to be personally liable upon such indorsement.

The plaintiff challenges the legal sufficiency of these defenses. He contends that the defendant Bertha Busch is personally liable, although the indorsement was " George P. Busch Estate by Bertha Busch Executrix," and that oral evidence cannot be offered to show

the intention of the parties at the time when the indorsement was made. In this latter view, plaintiff is clearly in error. Defendant may show that there was an agreement with the bank whereby she was to assume no personal responsibility in indorsing the note in manner described, and that the parties agreed that the estate only was to be bound thereby. (*Megowan* v. *Peterson*, 173 N. Y. 1.)

" Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." (Neg. Inst. Law, § 39.)

To quote Judge CARDOZO in *New Georgia Nat. Bank* v. *Lippmann* (249 N. Y. 307, 311): " Whenever the form of a paper is such as fairly to indicate to the eye of common sense that the maker signs as agent or in a representative capacity, he is relieved of personal liability if duly authorized (*Jump* v. *Sparling*, 218 Mass. 324, 326; *Consumers Twine & Machinery Co.* v. *Mount Pleasant Thermo Tank Co.*, 196 Iowa, 64; *Austin, Nichols & Co., Inc.*, v. *Gross*, 98 Conn. 782.) But along with this relief there goes a new burden the corrective of an exemption too broad if unrestrained. By hypothesis the signer has not meant to contract as an individual. Accordingly, there was need to make provision for the case where the agent or representative, though indicating an intention to contract otherwise than personally, had acted without authority. For this the proviso was inserted. As the price, so to speak, of relief from liability when authority exists, there is to be liability on the instrument when authority fails."

Is this defendant individually liable as a matter of law, despite the restrictive character of her indorsement, because she had no authority to bind the estate? In my opinion, the nature of the indorsement indicates a very clear intent on her part to bind the estate only. An executor is liable in his representative capacity only for such debts or obligations as were created by the decedent in his lifetime. For the debts and obligations which the executor himself incurs, he is personally liable and a suit against him in his representative capacity will not lie. (*O'Brien* v. *Jackson*, 167 N. Y. 31.) Where a debt is properly incurred by the executor, in the performance of his duties, he has recourse against the estate, and will be reimbursed by the estate. In the first instance, however, he is liable individually. The reason for the difference is that the prudence or propriety of the executor's obligation or expenditure may be questioned by the beneficiaries of the estate, whereas no

such right exists with respect to the debts, contracts or obligations made by the decedent himself. He was free to contract as he saw fit. His own debts and obligations must be discharged no matter how reckless or injudicious he may have been in contracting them.

Here the original obligation was contracted by the decedent in his lifetime. By his indorsement he agreed to pay the note if the maker defaulted. When Bertha Busch was appointed executrix, the estate was liable on this indorsement. It could either pay the note at maturity, or secure an extension of the time to do so, in the hope that the maker would discharge the obligation. The executrix adopted the latter course. The maker made payments in reduction of the debt, and secured an extension of the time to pay the balance. With each extension the debt was reduced by the maker. The executrix, by such extension, was not creating a new obligation, but was securing an extension and reduction of the old.

The form of the indorsement shows that the parties did not intend thereby to discharge the estate from liability, nor was it intended that the defendant Bertha Busch should individually become liable. " George P. Busch Estate by Bertha Busch Executrix " indicates very clearly that the parties intended to bind the estate only.

In *O'Brien* v. *Jackson* (*supra*) the suit was brought against the executors and trustees to recover a balance due on a contract for repairs made to some buildings belonging to the estate. The complaint showed that these repairs were made after the decedent's death, and the court, in reversing a judgment against the executors and trustees in their representative capacity, said (at p. 33): " The general rule is well settled in this state that executors or trustees cannot, by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract of obligation of the testator."

In the case at bar the liability created was founded upon the contract or obligation of the testator. The indorsement was a continuance of the original undertaking.

In *Chisolm* v. *Toplitz* (82 App. Div. 346; affd., on opinion below, 178 N. Y. 599), cited by plaintiff, the decedent, in his lifetime, had entered into a lease of vacant land upon which he had erected a building. The lease was for twenty-one years, and it contained renewal options at the expiration of each term at rentals estimated upon the value of the land if vacant. The testator died before the expiration of the lease, and his administrator with the will annexed

exercised the renewal option and secured a new lease to himself as administrator of the estate. It was held that he was personally liable upon the lease, even though it was taken for the benefit of the estate, because the new lease created a brand new obligation. The administrator was not bound to exercise the renewal option. Whether it was prudent or judicious to do so was a matter that could only be determined upon an accounting, in which the legatees or distributees of the estate had a right to be heard. To quote the opinion of the court (at p. 347): " While as between the executor and the person with whom he contracts the latter may rely upon the contract, the beneficiaries are not concluded by the executor's acts, but the propriety of the charge and the liability of the estate therefor must be determined in the accounting of the executor. In an action at law against the executor the legatees and persons interested in the estate have no opportunity to be heard (*Ferrin* v. *Myrick*, 41 N. Y. 315; *O'Brien* v. *Jackson, supra*). The defendant insists that this case falls within the exception to the general rule because the lease upon which suit is brought is founded upon a lease made by the testator in his lifetime. It is founded upon it, however, only in the sense that the fact that the testator had entered upon the prior lease afforded an opportunity to the defendant to make the present lease. It did not create any obligation so to do. *If the option to renew had been vested in the lessor, and not in the lessee, so that the defendant in consequence of the testator's agreement had been obliged to accept a new lease, the case would have been brought within the exception.*" (Italics mine.)

In *Chouteau* v. *Suydam* (21 N. Y. 179) the defendant's testator was contingently liable as indorser on the notes of a third party. An agreement was made by the parties in interest for the discharge of this liability by the sale of some pledged bonds. The action was in equity for an accounting and essentially was one to compel the performance of the compromise agreement. It was held that the execution of this agreement by a prior executor in his representative capacity bound the estate and could be enforced against the defendant as successor. In commenting on this case, the Court of Appeals, in *O'Brien* v. *Jackson* (*supra*), said at (p. 36): " The original liability of the estate, therefore, grew out of the obligation of the testator as indorser of the notes, and the agreement sued upon was merely a settlement or compromise of that liability."

In *Glenn* v. *Burrows* (37 Hun, 602) the decedent's note was renewed from time to time by the executors of his estate, who signed the renewal notes in their representative capacity. In an action brought upon the last renewal against the surviving executors in their representative capacity, it was contended that the

810

estate was not liable. The court says (at p. 606): " We think the surrender of the original note to the executors, and taking of theirs and afterwards taking in renewal of the latter the note of March, 1881, did not, in view of the circumstances, have the legal effect to discharge the original debt represented by the testator's note. The notes of the executors may have had the effect, and probably did operate, to suspend legal proceedings to enforce payment until maturity and default in their payment."

The question in each case is, has the executor created a new liability against the estate, or does it grow out of the testator's original obligation? If it is the latter, or an extension of the latter, then the executor is not liable in his individual capacity.

In my opinion the indorsement in question did not discharge the estate from liability upon the original note indorsed by the decedent himself. It was merely an extension of the time for its payment. No new obligation was created for the estate, and there is no reason why the executrix should be personally liable upon the indorsement, when both parties took such pains to indicate that it was intended to bind only the estate of George P. Busch, deceased. The plaintiff's motion to strike out the affirmative defenses is, therefore, denied, as is the plaintiff's motion for summary judgment.

The plaintiff's reply to the affirmative defenses and the affidavits served in opposition to the defendant's motion for summary judgment show that there is no dispute as to the material facts. Defendant's motion for summary judgment is, therefore, granted.